UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMAURA WOODS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:21-cv-00364-GZS |
| | ) | |
| TRAVIS BARNIES, | ) | |
| | ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff alleges that Defendant violated her constitutional rights when he entered her home without a warrant and arrested her with excessive force and without probable cause. (Complaint, ECF No. 1 at 3-4.) Defendant moves for summary judgment on all claims. (Motion, ECF No. 43 at 1.)

Following a review of the summary judgment record and after consideration of the parties' arguments, I recommend the Court grant Defendant's motion for summary judgment.

**SUMMARY JUDGMENT STANDARD**

"Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *United States v. Union Bank For Sav. & Inv. (Jordan)*¸ 487 F.3d 8, 17 (1st Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party

. . . .'" *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (quoting *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 7 (1st Cir. 2018)).   "[A]nd a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Id.* (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor.   *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015).   If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of the asserted claims, a trial-worthy controversy exists, and summary judgment must be denied as to any supported claim.   *Id.* at 78 ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)).   Unsupported claims are properly dismissed.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## SUMMARY JUDGMENT RECORD

When presented with a summary judgment motion, a court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to evidence of record.   Federal Rule of Civil Procedure 56(c) and District of Maine Local Rule 56(b) – (d) require the specific citation to record evidence. In addition, Local Rule 56 establishes the manner by which parties must present their factual statements and the evidence on which the statements depend.   A party's pro se status

does not relieve the party of the obligation to comply with the court's procedural rules.[1] *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 n.2 (1st Cir. 2000) (*abrogated on other grounds*). *See also Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007).

By rule, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b). A party opposing a motion for summary judgment must file an opposing statement in which it admits, denies, or qualifies the moving party's statements by reference to each numbered paragraph, with citations to supporting evidence, and in which it may set forth additional facts, in separately numbered paragraphs, with citation to supporting evidence. *Id*. at 56(c).

"Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." *Id*. at 56(f). Additionally, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." *Id*. Finally, "[t]he court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." *Id.*

---

[1] "[T]he Court is required to maintain a strict neutrality between opposing parties and even though a more forgiving reading may be appropriate for a *pro se* party in the summary judgment context, it is also true that 'judges and magistrate judges who review these filings must be able to rely on procedural rules so as to avoid becoming the lawyer for the unrepresented party or devoting an excessive portion of their time to such cases.'" *United States v. Baxter*, 841 F. Supp. 378, 383 (D. Me. 2012) (quoting *Clarke v. Blais*, 473 F. Supp. 2d 124, 129 (D. Me. 2007)).

Here, while Plaintiff filed a document entitled a "separate and concise statement of facts in opposition to Defendant's motion for summary judgment," (ECF No. 45), the statement does not comply with Local Rule 56. Plaintiff has cited no record evidence to support the facts asserted in the statement. In accordance with Local Rule 56, I deem Defendant's facts to be admitted and do not consider the facts asserted in Plaintiff's statement as record evidence. I consider Plaintiff's filing as written argument in opposition to the motion for summary judgment.

### SUMMARY JUDGMENT FACTS

On January 6, 2021, Defendant, who at all material times worked as a police officer with the Auburn (Maine) Police Department, along with another officer, responded to a 911 call reporting an assault at 46 Fourth Street, where Plaintiff was staying in an apartment. (Defendant's Statement of Material Facts (DSMF)) ¶¶ 1-4, ECF No. 44.) Lidia Chiquito, the 911 caller, was waiting outside the building when Defendant arrived; Defendant observed her holding her stomach. (*Id*. ¶¶ 5-7.)

Ms. Chiquito told Defendant and the other officer that Plaintiff had been staying in her apartment while she was away on vacation, but that when she returned, Plaintiff would not let her back into the apartment, shoved her toward the stairs, punched her in stomach, and threatened her. (*Id*. ¶¶ 7-11, 14.) She reported that Plaintiff had agreed to leave when Ms. Chiquito returned from vacation. (*Id*. ¶ 14.) Ms. Chiquito said she was worried about her safety and the safety of her children because they were with her when she tried to get back into the apartment. (*Id*. ¶ 12.)

Ms. Chiquito told Defendant that her keys to the apartment and her paperwork were in her luggage in the hallway outside her apartment.  (*Id*. ¶ 15.)  Defendant, the other officer, and Ms. Chiquito went to the fourth floor of the apartment building and located the luggage outside the door to Ms. Chiquito's apartment.  (*Id*. ¶ 16.)  Ms. Chiquito showed Defendant the lease, which listed Ms. Chiquito and no other name as a tenant, and located the key to the outside door to the building but did not find the key to the apartment.  (*Id*. ¶¶ 17-18, 21.)

While Ms. Chiquito was attempting to find the key to her apartment, Defendant knocked on the door to the apartment.  (*Id*. ¶ 21.)  Defendant heard Plaintiff respond through the door.  (*Id*. ¶ 22.)  Defendant advised Plaintiff that he was with the Auburn Police Department to which Plaintiff asked, "what the problem was."  (*Id*. ¶ 23.)  After an initial back and forth, Defendant told Plaintiff that Ms. Chiquito accused her of assault, and he wanted to talk with her about what had transpired.  (*Id.* ¶ 25.)  Plaintiff replied that she did not know what happened.  (*Id*. ¶¶ 25-26.)

Defendant attempted to give Plaintiff the opportunity to tell her side of the story, but he wanted Plaintiff to let him in the apartment to speak with her.  (Def's Ex. B. at 20:20-20:31.)  Although Plaintiff initially declined to open the door, she eventually opened the door and stepped outside the apartment.  (*Id*. at 22:24-22:29; DSMF ¶ 33.)

As soon as Plaintiff opened the door of the apartment, Ms. Chiquito and Plaintiff began arguing about who was the tenant of the apartment.  (DSMF ¶¶ 34, 36.)  Defendant stated—over Plaintiff and Ms. Chiquito's argument—that he can arrest Plaintiff for assault with Ms. Chiquito's statement alone.  (Def.'s Ex. B. at 23:50-24:00.)  Plaintiff did not tell

Defendant her side of the encounter with Ms. Chiquito; instead, she continued to argue with Ms. Chiquito.  (DSMF ¶ 38.)

Defendant, based on Ms. Chiquito's body language when he arrived at the scene and the lease with her name on it, found Ms. Chiquito to be more credible than Plaintiff. (*Id*. ¶ 40.)  Additionally, based on Plaintiff's escalating behavior and the nature of the argument, Defendant was worried that Plaintiff would further assault Ms. Chiquito unless Plaintiff was arrested.  (*Id*. ¶ 41.)

While the parties were in the common area outside the apartment, Defendant advised Plaintiff she was under arrest for assault.  (*Id*. ¶ 43.)  Defendant then attempted to place Plaintiff in handcuffs by taking hold of Plaintiff's left hand.  (*Id*. ¶ 44.) Plaintiff pulled her arm back, but Defendant was able to maintain his hold of Plaintiff's arm.  (*Id*. ¶ 45.)  Plaintiff stepped back into the apartment and Defendant entered the apartment to take her into custody as she pulled away from him.  (*Id*. ¶ 46.) The other officer present assisted by taking Plaintiff's right arm and putting it behind her back.  (*Id*. ¶ 48.)

Plaintiff continued to resist and argue about her entitlement to the apartment; Defendant, while holding Plaintiff's left arm, told Plaintiff to stop resisting and warned her that he would put her on the ground if she did not stop pulling away.  (*Id*. ¶¶ 49-51, 53.) Plaintiff subsequently stopped resisting, and Defendant and the other officer were able to place her arms behind her back in handcuffs.  (*Id*. ¶ 54.)  Defendant checked the handcuffs to confirm they were locked and spaced properly. (*Id*. ¶ 57.)

After she was handcuffed, Plaintiff continued to argue about the living situation and asked to get her receipt and her purse.  (Def.'s Ex. B. at 26:13.)  After getting the purse,

she showed Defendant a receipt and explained to him that she paid the rent.  (*Id.* at 26:40.)

Defendant told Plaintiff, "I am here for the assault." To which Plaintiff stated, "I didn't

assault her." (*Id.* at 27:05.)  Based on his observations, Defendant found Ms. Chiquito to

be more credible.  (DSMF ¶ 60.)

**DISCUSSION**

**A.      Federal Constitutional Claims**

**1.      False Arrest**

Plaintiff contends Defendant unlawfully arrested her for assault.  Plaintiff argues

that Defendant improperly relied solely on the allegations of Ms. Chiquito, and therefore

lacked probable cause to arrest Plaintiff for assault.

The Fourth Amendment protects the "right of people to be secure in their persons .

. . against unreasonable searches and seizures."  U.S. Const. amend. IV. "Because arrests

are 'seizure' of 'persons,' they must be reasonable under the circumstances." *District of

Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citing *Payton v. New York¸* 445 U.S. 573, 585

(1980)).  A warrantless arrest is reasonable "where there is probable cause to believe that

a criminal offense has been or is being committed."  *Devenpeck v. Alford*, 543 U.S. 146,

152 (2004).

"To determine whether an officer had probable cause for an arrest, 'we examine the

events leading up to the arrest, and then decide whether these historical facts, viewed from

the standpoint of an objectively reasonable police officer, amount to probable cause.'"

*Wesby*, 583 U.S. at 57 (2018) (citing *Maryland v. Pringle¸* 540 U.S. 366, 371 (2003).

"Probable cause exists when police officers, relying on reasonably trustworthy facts and

7

circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." *Charron v. New York*, 49 F.4th 608, 615-16 (2022) (quoting *United States v. Jones*, 432 F.3d 34, 41 (1st Cir. 2005)). The evaluation of what an officer might reasonably have understood turns on "common sense" and "practical considerations," not overly technical analyses. *United States v. Vongkayson*, 434 F.3d 68, 73 (1st Cir. 2006). Even where there are opposing stories, "police officers do not have an unflagging duty to complete a full investigation before making a probable cause determination." *Id.* (quoting *Karamanoglu v. Yarmouth*, 15 F.4th 82, 88 (1st Cir. 2021)). The First Circuit has "rejected the proposition that a police officer has a standing obligation to investigate potential defenses or resolve conflicting accounts prior to making an arrest." *Holder v. Town of Sandown*, 585 F.3d 500, 505 (1st Cir. 2009).

Under Maine law, to commit an assault, a person must "intentionally, knowingly, or recklessly cause bodily injury or offensive physical contact to another person." 17-A M.R.S. § 207(1)(A). A law enforcement officer is authorized to arrest without a warrant "[a]ny person who the officer has probable cause to believe has committed or is committing . . . assault, if the officer reasonably believes that the person may cause injury to others unless immediately arrested." *Id.* § 15(1)(A)(5).

At the time of the arrest, Defendant had Ms. Chiquito's report of the encounter and Plaintiff had declined to provide Defendant with her account despite Defendant's multiple requests. Plaintiff denied the assault only after she was placed under arrest. Based on Ms. Chiquito's report alone, Defendant had probable cause to arrest Plaintiff. *Charron*, 49 F.4th at 616 (quoting *Karamanoglu*, 15 F.4th at 87-88) ("Uncorroborated testimony of a

victim or other percipient witness, standing alone, ordinarily can support a finding of probable cause."). Plaintiff's later assertion that she did not assault Ms. Chiquito is insufficient to vitiate Defendant's probable cause determination.

### 2.    Unlawful Entry

Plaintiff asserts that Defendant unlawfully entered her home. Defendant argues Plaintiff does not have standing to bring the claim, Defendant had consent from Ms. Chiquito to enter the apartment, and Defendant was operating under exigent circumstances in making the arrest.

The Fourth Amendment protects against unreasonable searches and seizure when the person asserting the protection can "demonstrate that [she] personally has an expectation of privacy in the place searched." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). To analyze whether a person has a legitimate expectation of privacy "involves a two-part test: first, whether the defendant had an actual, subjective, expectation of privacy; and second, whether that expectation 'is one that society is prepared to recognize as objectively reasonable.'" *United States v. Battle*, 637 F.3d 44, 49 (1st Cir. 2011) (quoting *United States v. Rheault*, 561 F.3d 55, 59 (1st Cir. 2009)).

Regardless of whether Plaintiff has standing or whether Defendant had consent to enter, summary judgment is warranted. Exigent circumstances are an exception to the general need for a warrant to enter a home. Before the Supreme Court's decision in *Lange v. California*, which the Supreme Court decided approximately on June 23, 2021, nearly six months after Defendant arrested Plaintiff, the Supreme Court wrote,

> Courts are divided over whether the Fourth Amendment always permits an officer to enter a home without a warrant in pursuit of a fleeing misdemeanor suspect. Some courts have adopted such a categorical rule, while others have required a case-specific showing of exigency. We granted certiorari to resolve the conflict.

594 U.S. --, 141 S.Ct. 2011, 2017 (2021). The conflict among the courts as to the applicable law prior to *Lange* is significant to the assessment of Defendant's qualified immunity defense.

"[T]he doctrine of qualified immunity provides a safe harbor for a wide range of mistaken judgments." *Hatch v. Dep't for Child., Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). "This strain of immunity aspires to 'balance [the] desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive.'" *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004) (quoting *Buenrostro v. Collazo*, 973 F.2d 39, 42 (1st Cir. 1992)).

"The qualified immunity analysis has two facets: the court must determine whether the defendant violated the plaintiff's constitutional rights and then must determine whether the allegedly abridged right was clearly established at the time of the defendant's claimed misconduct." *Gray v. Cummings*, 917 F.3d 1, 10 (1st Cir. 2019) (internal quotation marks and citations omitted). Courts have discretion to analyze the steps non-sequentially. *See Maldonado v. Fontanes*, 568 F.3d 263, 270 (1st Cir. 2009); *see also Pearson v. Callahan*, 555 U.S. 223, 236.

10

When a court considers whether the constitutional right was clearly established at the time, the court must determine (a) "whether the contours of the right, in general, were sufficiently clear," and (b) "whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right." *Ford v. Bender,* 768 F.3d 15, 23 (1st Cir. 2014). The Supreme Court's acknowledgement in *Lange* of the split of authority on the question as to when an officer may enter a home to arrest a fleeing misdemeanor suspect demonstrates that the "contours of the right" were not sufficiently clear at the time Defendant entered the apartment. 141 S.Ct. at 2017. At a minimum, it was not clearly established that an officer would violate an individual's Fourth Amendment rights where the officer has placed the individual under arrest, the officer has a hold of the individual's arm to place the individual in handcuffs, and while the officer is attempting to place the individual in handcuffs, the individual steps into the home. Because the law was not clearly established at the time of Plaintiff's arrest, Defendant is entitled to qualified immunity on the unlawful entry claim.

### 3. Excessive Force

Plaintiff contends that Defendant used excessive force when he put Plaintiff's arms behind her back and applied handcuffs. Excessive force claims are evaluated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (some internal quotation marks

omitted) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).  In the context of force applied to make an arrest, the relevant factors for consideration include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (the so-called *Graham* factors).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  A court's assessment must also account for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396 – 97.  The test is an objective one: courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

The record establishes that Plaintiff resisted while Defendant was attempting to place her in handcuffs.  Defendant told Plaintiff to stop resisting and Plaintiff continued to attempt to pull away from Defendant.  Eventually, Plaintiff stopped resisting and Defendant and the other officer were able to place Plaintiff in handcuffs with her hands behind her back.  Defendant then checked the handcuffs to confirm that they were locked and spaced properly.  A reasonable fact finder could not make an excessive force determination because the facts show nothing more than use of that "'degree of physical coercion' typically attendant to an arrest." *Pena-Borrero v. Estremeda*, 365 F.3d 7, 12 (1st

Cir. 2004) (quoting *Graham*, 490 U.S. at 396.)  Defendant is entitled to summary judgment on Plaintiff's excessive force claim.

## B.      State Tort Claims

Defendant moves for summary judgment on all of Plaintiff's state law claims arguing in part that because Plaintiff failed to comply with the Maine Tort Claims Act (MTCA), 14 M.R.S. §§ 8107, the claims are barred as a matter of law.  (Motion at 20, ECF No. 43.) Defendant also argues he is entitled to immunity under the 14 M.R.S. § 8111(1).

Plaintiff alleges a state law tort claim for false imprisonment, trespass, and battery. A tort claim brought against a governmental employee, such as a police officer for Auburn Police Department, is only actionable as permitted by the MTCA. 14 M.R.S. § 2-807(4); 14 M.R.S.§ 8104-C.   Under the MTCA, to assert an action against a governmental employee, a claimant must first file a notice with the governmental entity "[w]ithin 365 days after any claim or cause of action" accrues.  *Id*. § 8107(1).   After the notice, the governmental entity has 120 days to "act thereon and notify the claimant in writing of its approval or denial of the monetary damages claimed." *Id*. § 8108.  This provision "acts as a jurisdictional bar if a plaintiff fails to wait 120 days before filing suit." *Learnard v. Inhabitants of Town of Van Buren*, 164 F. Supp. 2d 35, 40 (D. Me. 2001) (dismissing the "state law tort claims without prejudice" for lack of subject matter jurisdiction).

The record lacks any evidence to suggest that Plaintiff served the requisite notice. To the contrary the record establishes that Defendant first received notice when Plaintiff attempted to serve the summons and complaint.  Because Plaintiff has failed to satisfy the

requirements of the MTCA, Plaintiff cannot proceed on the state law claims. Defendant is entitled to summary judgment on the claims.[2]

CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendant's motion for summary judgment.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 2nd day of October, 2023.

---

[2] Even if Plaintiff had complied with the notice requirement, summary judgment would be warranted as the record evidence establishes that in making the decision to arrest Plaintiff, in physically placing Plaintiff in handcuffs, and in entering the apartment, Defendant was performing discretionary functions, and is thus immune from civil liability pursuant to 14 M.R.S. § 8111(1)(C).